## HITNER v. LEDERER.

(District Court, E. D. Pennsylvania. July 8, 1926.)

### No. 10698.

Internal revenue ⬿7(5)—For income tax purposes, value of first Liberty Bonds, received in payment of salary, is considered (Comp. St. § 6829ee et seq.).

For income tax purposes, value of first Liberty Bonds, received in payment of salary, is to be considered, notwithstanding Act April 24, 1917 (Comp. St. § 6829ee et seq.), declaring them exempt, both as to principal and interest, from all taxes, but that they "shall not bear the circulation privilege"; salary in legal effect being paid in money.

At Law. Action by Joseph G. Hitner against Ephraim Lederer, former Collector of Internal Revenue. Sur-rule for judgment. Rule discharged.

William Clarke Mason, of Philadephia, Pa., for plaintiff.

George W. Coles, U. S. Atty., of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The procedural form in which the question raised is presented is that of the payment of a tax, the collection of which is averred to have been illegal, the demand for the return of the sum paid, an action brought to recover it, and a rule for judgment because of the averred insufficiency of the affidavit of defense interposed. The ruling of the cause turns upon the construction of the contract embodied in that phrase of the act of Congress (Comp. St. § 6829ee et seq.) which exempts the first issue of Liberty Bonds, "principal and interest," from all manner of taxation. The motive and purpose of the enactment are clear enough. It was to boost the exchangeable value of the bonds in the hands of the holders and thus induce subscription to the original loan issue. If the privilege of exemption, which undoubtedly extends to the bonds and the income derived therefrom, covers also the otherwise taxable features of every transaction in which the bonds may be employed, the demand for the bonds will be tremendously stimulated, and, as the supply is limited, the price will be correspondingly enhanced. The "effect and consequences" of such a con-

struction of the contract are startling in their mere statement.

This cause itself supplies us with an all-sufficient illustration which will suggest the certain results to follow the proposition advanced if it is accepted as sound. Taxes, national, state, and local, are assessed upon or measured by the various forms and sources of incomes. These, if received in what is commonly called money, have in innumerable instances been made a source of public revenue through the taxing power. Provided only the bonds are in hand, these incomes can be paid as readily in bonds as in money. The same bonds, checked only by the price they command, may be used over and over again in any number of such transactions. The proposition now bluntly presented is that all receipts of any and every kind, if they come to the otherwise taxpayer in the form of these "tax free" bonds (as they easily may be made to do), at once lose their character as taxable income, or taxable anything, and must be excluded from the sum of what is taxable or which measures the tax to be paid.

Before going to what, as it seems to us, determines the acceptance or rejection of this proposition, there are two features of the argument addressed to us, the consideration of which may be here interpolated. The almost total paralysis of the taxing power which would follow the construction of this act of Congress for which the plaintiff stands has been urged upon us as a reason for rejecting this view. There is the highest authority for looking to the "effects and consequences" of any suggested meaning of a legislative enactment before finding what its meaning is. This, however, is merely as a guide and aid to its proper construction. The "effects and consequences," whatever they are, of a clearly expressed enactment, do not supply a justification for the rejection of its plain meaning. The results, however grievous they may be, must be borne, if it is so "denominated in the bond."

It is, on the other hand, urged upon us that the statute in question, exempting this issue of bonds, "principal and interest," from the action of any tax, is a contract made with the holders, the obligation of which it is beyond the power of the same or any other Congress to loose. No one would dispute the ethical obligation of the nation to observe the "sanctity of contracts." By an express provision in the Constitution of the United States, the states are rendered impotent to "impair" such obligations; but our attention has not been directed to any like limitation upon the power of the United States.

It is unnecessary to hold that neither the Fifth nor the Fourteenth Amendment brings about the equivalent of this result, because it is safe to assume that Congress did not intend any of the taxing acts to impose taxes upon anything or anybody previously solemnly exempted.

This takes us to what seems to us to be the determining view to be taken, which is the act of Congress granting the exemption claimed. There are three pertinent significant features in the Act of April 24, 1917. One is that the "principal and interest" of the bonds are exempted, "both as to the principal and interest," from all taxes; another is that this general all-embracing exemption is emphasized by the enumeration of certain named exceptions, and the third is, "but such bonds shall not bear the circulation privilege." The plain meaning of the contract thus expressed is that neither the principal sum of these bonds nor the interest paid thereon can be either in themselves the subject of taxation nor can they be used to measure a tax imposed.

This takes us to the tax which was imposed. Before considering what it was, it may be helpful to consider what it was not. It was not a tax levied (as are some state taxes) because of the ownership of these bonds, which would have been a tax upon the "principal," nor was it a tax levied upon or measured by the coupons which had been paid, which would have been a tax upon the "interest." The tax in question in consequence does no violence to the verbiage of the act of 1917, as both the "principal" of the bonds and the "interest" paid thereon have been left untaxed. The taxing act imposes the well-known "income and excess profits" tax. If any part of the income which here measures the tax levied had been the interest paid on these bonds, such part of the income would clearly not have been taxable; if any part of the profits which likewise measured the tax had been profits made on the purchase and sale of such bonds, such profits would neither be taxable nor could they be made the measure of a tax. Neither such interest nor such profits entered into the tax assessment. It was solely and exclusively income in the form of salary or compensation for services, and had absolutely nothing in this sense to do with Liberty Bonds.

Why, then, should such an income be claimed to be exempt? It is merely because of the accidental and extraneous circumstance that the salary, instead of being all paid in so-called money was paid in Liberty Bonds. In legal effect, what was done was

that the employer, who had previously owned the bonds, sold them for money, which was paid over to the employee, who thereupon, with the money, bought the bonds which had been thus sold. This effect, and only this effect, was wrought by the short cut followed. The bonds are by the express provision of the act of 1917 not a medium of exchange recognized by law. This means that what was taxed was not "bonds," but "income." If the one was in practical effect necessarily the other, the mere difference in terminology would not work a difference in fact. It is just here, we think, that the instant case differs from the cases to which we have been referred, among which are Evans v. Gore, 253 U. S. 245, 40 S. Ct. 550, 64 L. Ed. 887, 11 A. L. R. 519; Miles v. Graham, 268 U. S. 501, 45 S. Ct. 601, 69 L. Ed. 1067; Gillespie v. Oklahoma, 257 U. S. 501, 42 S. Ct. 171, 66 L. Ed. 338.

It is a general truth that the aggregate sum of income and profits by which the sum of the tax to be paid is determined will be analyzed, and each item scrutinized with respect to its source, and included or excluded by what it is found to be. By constitutional command the compensation of a judge in office cannot be diminished. This means that it cannot be done directly, nor can it be done indirectly by paying with one hand and withdrawing by the other under the guise of a tax. Unfortunately, it may be done by the simple expedient of making payment in 40 per cent. dollars. This is, however, no diminishment in dollars. To pay and then withdraw a part of the payment made is to diminish the compensation given. In practical effect and real fact the forbidden thing is attempted to be done. We do not see that the decided cases rule the case before us.

The rule for judgment is accordingly discharged, with the suggestion that the record be put into shape for the entry of final judgment, which it would seem could readily be done.